United States District Court
Southern District of Texas
**ENTERED**
September 24, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMIT HUSSAINBHAI SOMANI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-26-682 |
| | § | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY; and TODD BLANCHE, ATTORNEY GENERAL OF THE UNITED STATES | § § § § § § § | |
| | § | |
| Defendants.[1] | § | |

# MEMORANDUM AND ORDER

Pending is Defendants Todd Blanche, United States Department of Homeland Security, and Markwayne Mullin's Motion to Dismiss under FED. R. CIV. P. 12(b)(1) (Document No. 15), to which Plaintiff Amit Hussainbhai Sommani responded and Defendants replied in opposition. After carefully considering the Motion, Response, Reply, and applicable law, the Court concludes as follows.

---

[1] Markwayne Mullin, Secretary of the Department of Homeland, and Todd Blanche, Attorney General of the United States, are substituted in their official capacities for their predecessors in office when the case was filed. See FED. R. CIV. P. 25(d). Any further filings shall be in the substituted parties' names. Id.

## I. Background

Plaintiff, a citizen of India, brings this action against the United States Department of Homeland Security ("DHS") under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101. Plaintiff entered the United States in May 2014 on a B1/B2 visitor visa, which expired November 7, 2014. Document No. 11 at 2. Plaintiff filed a petition for an H-1B work visa on April 11, 2017, which was approved with a valid I-94 period from January 19, 2019, through September 17, 2020. Id. Before the expiration of the I-94, he filed an I-918 U-Visa[2] on November 9, 2018, in response to which the United States Citizenship and Immigration Services ("USCIS") granted a "bona fide" determination[3] and remains pending. Id. at 2-3. Plaintiff's wife, a U.S. citizen, filed an I-130

---

[2] An I-918 form is a petition, which, if granted, provides temporary lawful status and work authorization to an alien who has suffered substantial physical or mental abuse and "has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities investigating or prosecuting criminal activity." 8 U.S.C. § 1101(a)(15)(U)(i)(III); 8 U.S.C § 1184(p)(6). Plaintiff's I-918 petition has not been granted.

[3] Bona Fide Determination ("BFD") is a visa pre-waiting list where applicants may receive interim benefits like employment authorization documents ("EAD"). The Secretary of Homeland Security adopted the BFD Policy pursuant to the Secretary's discretionary authority under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1184(p)(6).

petition on Plaintiff's behalf, which she subsequently withdrew upon dissolution of the marriage. Plaintiff also filed an I-485 petition[4] for adjustment of status to permanent residence in November 2021, which USCIS denied in January 2024. Id. at 3. Shortly thereafter, in June 2024, Plaintiff filed a second I-485 petition and an I-360 petition[5] for an abused spouse. Id. USCIS gave Plaintiff a "bona fide" determination in 2024 and 2025 with an expiration date of February 18, 2026. Document No. 11-6 at 6.

On January 12, 2026, while Plaintiff's I-918, I-360, and I-485 petitions remained pending, DHS issued a Notice to Appear ("NTA") before a Department of Justice immigrations judge for removal proceedings set on March 2, 2026. Document No. 11-7 at 2, 4-6. Shortly thereafter, Plaintiff filed this action, requesting the Court declare that the DHS did not have authority to issue an NTA to Plaintiff while his petitions remained pending. Document

---

[4] The I-485 petition, if granted, allows for the adjustment of status of a nonimmigrant to that of a person admitted for permanent residence. *See* 8 U.S.C § 1255(a)(1) ("[T]he status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment".) Plaintiff's I-485 petition has not been granted.

[5] An I-360 form is another petition which, if granted, provides lawful status and work authorization for a litany of individuals, including self-petitioning applicants under the Violence Against Women Act ("VAWA"). *See* 8 U.S.C § 1184 (d)(3)(A). Plaintiff's I-360 petition has not been granted.

No. 1. Defendants move to dismiss Plaintiff's First Amended Complaint under FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction, arguing that INA § 1252(g) bars judicial review. Document No. 15.

## II. Standard of Review

A party may seek dismissal of an action for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks omitted). "Article III of the Constitution limits federal courts to deciding 'Cases' and 'Controversies.'" Dep't of Commerce v. New York, 139 S. Ct. 2551, 2565 (2019). The burden of establishing subject-matter jurisdiction is on the party seeking to invoke it, in this instance, Plaintiff. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). The court should consider a Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. Id. at 161.

## III. Analysis

The jurisdiction-stripping provision of INA § 1252(g) on its face applies to this case. The statute reads:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

This subsection was enacted in 1996, amending the Immigration Nationality Act of 1952, *see* Reno v. Am.-Arab Comm., 119 S. Ct. 936, 938 (1999), and amended in 2005 to strengthen its force by adding, "(statutory or nonstatutory) including section 2241 of Title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title". Pub. L. No. 109-13, §106(a), 119 Stat. 231 (2005) (amending 8 U.S.C § 1252). The statute applies only to the Attorney General's three "discrete actions" to *commence* proceedings, *adjudicate* cases, or *execute* removal orders. Reno v. Am.-Arab Anti-Discrimination Comm., 119 S. Ct. 936, 943 (1999) (emphasis added). Nonetheless, Plaintiff asks this Court to vacate the noticed commencement of removal proceedings.

Plaintiff asserts that he is not challenging the discretionary decision to commence proceedings but is challenging

the government's very authority to commence these proceedings. Document No. 16 at 5. The government's statutory authority to initiate removal proceedings of an alien is expressly conferred by 8 U.S.C. § 1229, which prescribes the matters to be included in the Notice to Appear. Section 1229a then describes how the removal proceedings shall be conducted, including recognition of the alien's due process rights to have representation by counsel, to examine the evidence against the alien, to present evidence on the alien's behalf, and to cross-examine government witnesses. Regardless of the statutes, however, Plaintiff (indisputedly an alien), claims that his status renders the government impotent to exercise its authority under § 1229 to issue to him a Notice to Appear and thereby commence proceedings. He argues that the NTA is an "ultra vires" act by the government. Document No. 11 at 5-6.

The "ultra vires" claim is premised on Plaintiff having filed three applications with USCIS: (1) An I-485 Petition filed in 2024 to register permanent residence or adjust status. Id. at 3. When Plaintiff filed this form, USCIS acknowledged receipt and notified Plaintiff that it "does NOT grant the beneficiary any immigration status, and it is not evidence that your case is still pending." Document No. 11-5 at 2. (2) An I-360 petition filed in 2024, to seek relief under the Violence Against Women Act. Document 11-6 at 4. USCIS acknowledged receipt and that Plaintiff

had a prima facie determination for one year from September 5, 2024, id., and a year later granted a request to extend the prima facie determination for 180 days, which expired February 18, 2026, id. at 6. USCIS's response states in all caps: "ESTABLISHING A PRIMA FACIE CASE FOR CLASSIFICATION UNDER THE SELF-PETITIONING PROVISIONS OF THE VIOLENCE AGAINST WOMEN ACT DOES NOT NECCESARILY MEAN THAT YOUR PETITION WILL BE APPROVED." Id. The application was never approved and there was no change in Plaintiff's alien status. (3) An I-918 petition filed in 2018, requesting U non-immigrant status. Document No. 11-4 at 2. USCIS replied that the statutory cap for U-1 nonimmigrant status had been reached for that fiscal year, and that no grants of new status would occur until new visas became available. Id. USCIS determined that Plaintiff's petition was bona fide and that he "warrant[ed] a favorable exercise of discretion" and had been placed in "deferred action" for four years. Id. USCIS advised Plaintiff that "[d]eferred action is an act of administrative convenience to the government which gives some cases lower priority for removal," but it "does not constitute valid U nonimmigrant status or employment authorization, and may not be used to demonstrate legal immigration or employment status." Id. at 2, 3. The petition has never been granted. None of Plaintiff's petitions to USCIS or "other provision of law (statutory or nonstatutory)," § 1252(g),

pertaining to those petitions is shown to preclude the Attorney General from commencing removal proceedings against him.

Plaintiff in his Amended Complaint states "there is a statutory mandate that Plaintiff is not unlawfully present until and unless USCIS denies Plaintiff's applications," Document No. 11 at 6, and in his opposition Response he repeats "there is a statutory mandate that Plaintiff is not unlawfully present until and unless USCIS denies Plaintiff's applications," Document No. 16 at 5. No statutory citation accompanies either statement. In fact, in none of Plaintiff's filings does Plaintiff cite the putative "statutory mandate." Indeed, the Court has found none.

Plaintiff does cite two cases, neither of which supports Plaintiff's theory that § 1252(g) does not strip jurisdiction from this Court in this case. Garcia v. Att'y Gen. U.S., 553 F.3d 724 (3d Cir. 2009), was a case on appellate review from a decision of the Board of Immigration Appeals. The court held that § 1252(g) was not implicated because it had "nothing to do with petitions for review of final orders of deportation, or indeed with any sort of review of such orders," id. at 729 (quoting Shah v. Reno, 184 F.3d 719, 722 (8th Cir. 1999)). Plaintiff's second inapposite case is Lopez v. Trump, 2025 WL 3274224 (S.D.N.Y. July 10, 2025). The district court in Lopez temporarily enjoined Immigration Customs and Enforcement ("ICE") from detaining an alien who had been served by ICE with a Warrant of Removal issued pursuant to an

invalid Reinstatement Notice. The alien brought suit to challenge the constitutionality of her detention. The government contended the district court was stripped of jurisdiction by Section 1252(g). The court rejected that contention, explaining as follows:

> As the Supreme Court has made clear, Section 1252(g) is not a "'zipper' clause that says 'no judicial review in deportation cases unless this section provides judicial review'" "Section 1252(g) is directed 'against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion.'" Accordingly, it is a "narrow" provision that is limited to three discrete actions the "decision or action" to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders"

Id. at *6 (quoting Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999) and Ozark v. Hyde, 136 F.4th 382, 396 (2d Cir. 2025)). It is the protected prosecutorial discretion that is at issue in this case: the right "[t]o commence proceedings." INA § 1252(g). Contrary to the Petitioner's contentions, the dicta from Lopez regarding § 1252(g)'s prohibition on judicial constraints on prosecutorial discretion, quoted above, supports the government's position that this Court lacks jurisdiction over its authority to commence removal proceedings, which falls directly under § 1252(g)'s purview as interpreted by Reno. This Court lacks jurisdiction to constrain the government from commencing such cases, and, therefore, over Plaintiff's claim regarding the government's authority to issue an NTA.

Although Plaintiff cannot proceed with his claim here, he is not without recourse. He may litigate before the immigration judge whatever beneficial effect any of Plaintiff's applications to USCIS may have on his alien status. *See* 8 U.S.C. § 1229a(b)(4)(B). If unsuccessful, Plaintiff may take his appeal to the Board of Immigration Appeals and if that appeal is unsuccessful, he can petition for review by the United States Court of Appeals. *See* Dep't. of Homeland Sec. v. Thuraissigiam, 140 S. Ct. 1959, 1964 (2020). But as explained above, Plaintiff's various applications to USCIS and the government's initial responses do nothing to invalidate the government's clear discretionary authority to commence proceedings by issuing an NTA to Plaintiff, an action with respect to which this Court is stripped of jurisdiction by 8 U.S.C. § 1252(g).

Plaintiff also alleges that Defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C § 706(2)(A) and (C), claiming that the NTA was arbitrary, capricious, an abuse of discretion, not otherwise in accordance with the law, and in excess of statutory jurisdiction. Document No. 11 at 8 (quoting 5 U.S.C. § 706(2)(A) and (C)). For the reasons stated above, it appears that the NTA was none of those things, but regardless, it remains an exercise of prosecutional discretion over which this Court has no jurisdiction. The NTA decides nothing on the merits of Plaintiff's claims as to why he should not be removed. Plaintiff's

"challenge to the Attorney General's decision to 'commence proceedings' against [Plaintiff] falls squarely within § 1252(g)." Reno, 119 S. Ct. at 945. Plaintiff fails to state a claim under the APA over which this Court has jurisdiction.

## IV. Order

For the foregoing reasons, it is

ORDERED that Defendants the United States Department of Homeland Security, Secretary of Homeland Security Markwayne Mullin, and Attorney General Todd Blanche's Motion to Dismiss (Document No. 15) is GRANTED, and Plaintiff Amit Hussainbhai Somani's claims are DISMISSED WITHOUT PREJUDICE for lack of subject-matter jurisdiction.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED at Houston, Texas, on this 24th day of September, 2026.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE